# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br><br>Information associated with<br>"catiniafarrington@yahoo.com" and<br>"patrickthomas2000@yahoo.com" stored at<br>premises operated by Yahoo!, Inc. | )<br>)  Case No. 1:17mj41<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See Attachment A, attached hereto and incorporated by reference.**

located in the  Northern  District of  California , there is now concealed:

**See Attachment B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ✔ evidence of a crime;
- ✔ contraband, fruits of crime, or other items illegally possessed;
- ✔ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028A | (aggravated identity theft) |
| 18 U.S.C. § 1035 | (false entry) |
| 18 U.S.C. §§1347 & 1349 | (health care fraud and conspiracy to commit health care fraud) |

The application is based on these facts:

**Please see Affidavit, attached hereto and incorporated herein by reference.**

✔ Continued on the attached sheet.

*Stephanie Cheek*
*Applicant's Signature*

Stephanie Cheek, Special Agent, HHS-OIG-OI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/24/17

*Judge's signature*

City and State:  Greensboro, North Carolina     L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

This warrant applies to information associated with the following e-mail accounts that are stored at premise owned, maintained, controlled, or operated by Yahoo!, Inc. ("Yahoo"), a company headquartered at 701 First Avenue, Sunnyvale, California 94089.

1. **catiniafarrington@yahoo.com,** from February 23, 2009 to May 14, 2015.
2. **patrickthomas2000@yahoo.com**, from February 23, 2009 to May 14, 2015.

**Please provide this information in an end-user viewable electronic format.**

Affidavit of SA Stephanie Cheek – Attachment A Page 1

# ATTACHMENT B

# PARTICULAR THINGS TO BE SEIZED

I. **Information to be disclosed by Yahoo!, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo!, Inc., Yahoo!, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. The contents of all e-mails stored in the account, including copies of e-mails sent to and from the account, draft e-mails, all attachments, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b. All records preserved by Yahoo! in response to previously submitted preservation requests submitted by the government for the accounts listed in Attachment A.

c. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

d. All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, files, and attachments;

e. All records pertaining to communications between Yahoo!, Inc. and any person regarding the account, including contacts with support services and records of actions taken.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1347, 1349, 1035, and 1028A from February 23, 2009 through May 14, 2015 in the form of the following for each account or identifier listed on Attachment A:

a. Records identifying who created, used or communicated with the accounts listed in Attachment A, including the location of said users, involving emails pertaining to the operation of DCMBHS and the Medicaid program; and

b. All electronic mail, including preserved electronic mail, any internet conversations, any files, any attachments, any images, and any calendar entries to, from, or associated with the e-mail addresses listed on Attachment A pertaining to the operation of DCMBHS and the Medicaid program.

Affidavit of SA Stephanie Cheek – Attachment B Page 2

Case 1:17-mi-00041-LPA   Document 1   Filed 02/24/17   Page 4 of 17

# AFFIDAVIT IN SUPPORT OF AN APPLICATION
# FOR A SEARCH WARRANT

I, Stephanie Cheek, being duly sworn, depose and say as follows:

## INTRODUCTION AND BACKGROUND

1. This affidavit is made in support of an application for a search warrant for all available subscriber information, stored electronic mail messages, and related information detailed in Attachment A to this affidavit, controlled by Yahoo! Inc. ("Yahoo"), for the users identified as:
    a. **catiniafarrington@yahoo.com, and**
    b. **patrickthomas2000@yahoo.com**

    on the server(s) of Yahoo, headquartered at 701 1st Avenue, Sunnyvale, California. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo! Inc. to disclose to the government records and other information in its possession pertaining to the subscribers or customers associated with these accounts.

    Requests to preserve these accounts were made on or about April 11, 2016, July 8, 2016, and October 6, 2016. Your affiant believes evidence in these accounts is still in existence. These accounts were utilized in the normal course of business by individuals identified in this affidavit during the operation of a company known as Durham County Mental & Behavioral Health Services between February 23, 2009 through May 14, 2015.

2. I have been employed as a Special Agent by the U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations (HHS-OIG-OI) since 2001. I am currently assigned the responsibility of investigating cases involving criminal fraud against various programs funded by the United States Department of Health and Human Services, including the Medicare and Medicaid Programs. In my capacity as an investigator, I investigate white-collar crimes that often involve the use of computers to commit violations of federal laws. I have gained experience regarding the use of computers and the Internet in criminal activity, and the investigation of such activities, through everyday work relating to these types of investigations.

3. This affidavit is based upon direct personal knowledge derived from the affiant's investigation, reports and investigation provided by other agencies closely related to this case, including investigators from the North Carolina Department of Justice, Medicaid Investigations Division (NCDOJ-MID), Internal Revenue Service-Criminal Investigation Division (IRS-CID), and information received from persons believed to be credible by the affiant. Because this affidavit is submitted for the limited purpose of establishing

probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1347 (health care fraud), 18 U.S.C. § 1349 (conspiracy to commit health care fraud), 18 U.S.C. § 1035 (false statement relating to health care fraud), and 18 U.S.C. § 1028A (aggravated identity theft) have been committed by Durham County Mental & Behavioral Health Services, LLC (DCMBHS), Catinia Farrington (Farrington), and/or Patrick Thomas (Thomas). There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes as described in Attachment B.

5. As part of a joint investigation with the NCDOJ-MID and IRS-CID, your affiant has been investigating the activities of DCMBHS, Farrington, and Thomas. Your affiant believes that DCMBHS, Farrington, and/or Thomas have:

    a. submitted claims and/or caused claims to be submitted to Medicaid for services that were not rendered;

    b. possessed and used without lawful authority the means of identification of other persons, more specifically:

    - Medicaid Identification Numbers (MID #s) that uniquely identify individual recipients were submitted on claims to Medicaid as if services were rendered to the recipients, when in fact, services were not rendered;
    - Medicaid Provider Numbers that uniquely identify Licensed Psychological Associates (LPAs) were submitted on claims to Medicaid identifying the LPAs as rendering providers, when in fact, they were not rendering providers for the services billed to Medicaid.

6. DCMBHS is a limited liability company with a principal office listed as 4018 Trotter Ridge Road, Durham, North Carolina. This address is located in Durham County, which is in the Middle District of North Carolina. According to the Articles of Organization filed on February 23, 2009, with the North Carolina Secretary of State, Farrington signed the Articles as "Organizer" of DCMBHS. Farrington signed as "Manager" in several Annual Reports filed by DCMBHS.

7. Farrington is known to have lived at 4018 Trotter Ridge Road in Durham, North Carolina with Thomas. Farrington and Thomas have a child together. Farrington is known to reside in Cypress, Texas while enrolled in a college program.

**MEDICAID PROGRAM**

Affidavit of SA Cheek – Page 2

8. The North Carolina Medical Assistance Program (hereinafter referred to as "Medicaid" or "Medicaid Program") was authorized by Title XIX of the Social Security Act in 1965. Medicaid is a state administrated program significantly supported by federal funds. Medicaid is designed to provide health coverage for low-income families, parents, children, seniors, and people with disabilities.

9. The Centers for Medicare and Medicaid Services (CMS), part of the United States Department of Health and Human Services (USDHHS), establishes certain parameters for all states to follow when administrating the Medicaid program; however, each state administers their Medicaid program differently. CMS is the source of the federal funding provided to each state to administer the Medicaid program.

10. Medicaid covers reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs. Covered services include mental and behavioral health services. DCMBHS was registered with Medicaid as an outpatient mental health provider.

11. A qualified individual who receives Medicaid benefits is referred to as a recipient. Medicaid functions as a medical insurance plan, which defrays the cost of receiving covered and medically necessary services for recipients.

12. The North Carolina Department of Health and Human Services (NCDHHS) oversees the North Carolina Division of Medical Assistance (DMA). DMA manages the Medicaid program in North Carolina.

13. DMA contracts with Computer Sciences Corporation to operate and maintain the NCTracks system. (The government services unit of Computer Sciences Corporation joined with SRA International, Inc. in November 2015, to form CSRA.) NCTracks is the multi-payer Medicaid Management Information System for the NCDHHS.

14. A Medicaid "provider" is defined as any individual or entity furnishing Medicaid services under a provider agreement with the Medicaid Agency (42 CFR 400.203).

15. Every provider who participates in the North Carolina fee-for service Medicaid Program must apply for enrollment and be approved by DMA or a DMA contractor. Once approved by DMA or a DMA contractor, the provider is assigned a unique Provider Number to be utilized when submitting claims to Medicaid. DCMBHS was assigned unique Medicaid Provider Number 6006697.

16. The Administrative Simplification provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) mandated the adoption of standard unique identifiers for health care providers. The purpose of the provision is to improve the efficiency and effectiveness of the electronic transmission of health information. CMS developed the National Plan and Provider Enumeration System to assign these unique

National Provider Identifiers (NPI). Every provider must obtain a NPI in order to submit claims. DCMBHS's NPI was 1497994321.

17. Each Medicaid recipient is assigned a MID # that uniquely identifies the individual receiving benefits. The MID # is submitted on claims to the Medicaid Program identifying the individual that receives services. Individuals who accept Medicaid benefits agree that their records may be reviewed by the Medicaid Program and Medicaid fraud investigators to determine whether services were rendered.

18. In order to obtain reimbursement from the Medicaid Program for providing services to a Medicaid recipient, the provider must submit a claim that includes the provider's name, address and NPI, the patient's name and MID #, the date of service, a code identifying the service(s) rendered, the rendering provider's unique provider number, the diagnosis code(s), and other information. The provider then electronically submits the claim to CSC/NCTracks. CSC/NCTracks' operations are located in Raleigh, North Carolina. CSC/NCTracks relies upon the information contained in the claim to pay the claim as submitted. CSC/NCTracks then issues reimbursement to the provider.

19. Each claim that a provider submits to Medicaid is considered a separate claim under the provider's agreement. The provider's agreement with Medicaid states that the provider agrees to keep such records as are necessary to fully disclose the extent of services provided to recipients and that the provider agrees to furnish, upon request of the DMA or DHHS, information regarding any payments claimed for providing services.

20. From February 16, 2009, through May 5, 2016, DCMBHS was directly enrolled in the North Carolina Medicaid Program as an Outpatient Mental Health Provider. DCMBHS actively submitted claims to Medicaid from June 2011 through May 2015. Payments for claims submitted to Medicaid by DCMBHS were deposited by electronic funds transfer into Branch Banking & Trust (BB&T) account number ****7128.

21. From June 24, 2011 through April 8, 2015 Medicaid electronically deposited a total of $4,079,923.07 into DCMBHS' bank account ****7128 at BB&T. The bank statements from BB&T for this account were mailed to 4018 Trotter Ridge Road, Durham, North Carolina. The only signature authority on the account was Farrington. She was listed as the "Owner" of DCMBHS on the account signature card.

22. After funds from Medicaid were deposited into bank account ****7128, Farrington and Thomas used the funds for mostly personal expenditures, including:

| | |
|---|---|
| Transfers to Thomas accounts or accounts under his control | $1,658,757 |
| Transfers to Farrington accounts or accounts under her control | $1,004,593 |
| Travel Expenses | $177,109 |
| Car Expenses | $109,778 |
| Clothing Purchases | $97,821 |
| Credit Card Payments | $95,753 |
| Household Expenses and Utilities | $89,142 |

| ATM Cash Withdrawals | $86,868 |
| --- | --- |
| Food and Entertainment | $79,687 |
| Mortgage Payments | $57,133 |
| Other Withdrawals | $43,350 |
| **TOTAL** | **$3,499,991** |

**Medicaid Outpatient Behavioral Health Benefit**

23. Some of the services covered by Medicaid include Outpatient Behavioral Health Services (OBHS), which includes outpatient mental health services. OBHS include assessments, treatment (including: individual medical evaluation and management, medication management, individual and group therapy, and behavioral health counseling), family therapy and psychological testing for recipients of all ages. Direct-enrolled providers, such as DCMBHS, must comply with DMA Clinical Policy No. 8C when providing OBHS services.

24. Each provider of OBHS is required by Medicaid to maintain service notes and other medical records for a period of six years in order to document and substantiate any reimbursement requested from Medicaid. Not only are the service notes a requirement under Medicaid policy, they are necessary to ensure that these recipients receive the care that they need and that Medicaid funds are designated to provide, by giving an account of the efficacy of the individualized plan of care and insight into the recipient's progress and need for continued care.

25. For OBHS, providers must maintain records that document the provision of services for which Medicaid Reimburses. According to DMA Clinical Policy No. 8C, Providers must maintain, in each recipient's record, the following documentation, at a minimum:
    a. Written consent for treatment;
    b. Demographic information;
    c. Recipient's name, service record number, and MID # on each page;
    d. An individualized treatment plan;
    e. Documentation of entrance criteria, continued service criteria, and discharge criteria;
    f. Copies of any testing, summary and evaluation reports;
    g. Documentation of communication regarding coordination of care activities; and
    h. All evaluations, notes and reports must contain the full date the service was provided (month, day, and year).
    (*Source: DMA Clinical Coverage Policy No. 8C, Section 7.0*)

26. Services are covered when they are medically necessary and the procedure is individualized, specific, and consistent with symptoms or confirmed diagnosis of the illness or injury under treatment, and not in excess of the recipient's needs.

## INVESTIGATIVE SUMMARY

27. On February 23, 2009, DCMBHS filed the Articles of Organization with the North Carolina Secretary of State. The Organizer was identified as Farrington. The principal office of DCMBHS was listed as 4018 Trotter Ridge Road, Durham, North Carolina, which is located in the Middle District of North Carolina.

28. On February 24, 2009, DMA Provider Services received a Medicaid Participation Agreement from DCMBHS. Farrington signed this agreement and listed her title as CEO/Owner. The unique Medicaid Provider Number assigned to DCMBHS was 6006697 with an effective date of February 16, 2009. The site address and payment address was listed as: 4018 Trotter Ridge Road, Durham, North Carolina.

29. On April 8, 2009, "M.T.", a Licensed Psychological Associate (LPA) submitted an Outpatient Mental Health Provider Enrollment Application for Individual to Medicaid. M.T. was assigned a unique Medicaid Provider Number.

30. On September 23, 2009, "A.W.", a Licensed Psychological Associate (LPA) submitted an Outpatient Mental Health Provider Enrollment Application for Individual to Medicaid. A.W. was assigned a unique Medicaid Provider Number.

31. On July 26, 2010, Farrington submitted a request to Medicaid Provider Enrollment to keep DCMBHS' Medicaid Provider Number (6006697) eligible after receiving a notice of 12 months of inactivity. Farrington signed this request and listed her title as Executive Director/Owner.

32. On June 7, 2011, DCMBHS submitted an electronic claims submission (ECS) Agreement to Medicaid identifying M.T. and A.W. as the rendering service providers for DCMBHS. Farrington signed this ECS Agreement and listed her title as CEO/Owner of DCMBHS.

33. On June 9, 2011, Medicaid began receiving claims from DCMBHS. Medicaid continued receiving claims from DCMBHS until May 2015.

34. On September 9, 2012, DCMBHS submitted a Provider Recredentialing Form to NCTracks identifying the contact person as Farrington and the contact email address as **catiniafarrington@yahoo.com**

35. On June 5, 2013, DCMBHS submitted a Provider Enrollment Form identifying the contact email as **catiniafarrington@yahoo.com.** Farrington electronically signed this form listing her relationship as the Owner of DCMBHS.

36. On October 8, 2014, Paychex – a national company that provides small business payroll services – entered into an agreement with DCMBHS. The authorized executive officer identified in the agreement was Patrick Thomas. Thomas listed his title as owner of DCMBHS, and the email address provided to Paychex was **patrickthomas2000@yahoo.com.**

37. From June 9, 2011 through May 6, 2016 DCMBHS was directly enrolled in the North Carolina Medicaid Program as an Outpatient Mental Health Provider and submitted claims for payment. Payments for claims submitted to Medicaid by DCMBHS were deposited by electronic funds transfer into Bank Branch & Trust (BB&T) account number ****7128. The account holder for this account was Farrington. Starting in September 2011, the address associated with this account was 4018 Trotter Ridge Road, Durham, North Carolina. Witness testimony and bank records have shown that Thomas and Farrington both live at this address or did live at this address at one time.

38. On May 28, 2015, the NCDOJ-MID was told by a cooperating defendant known as "T.C." that Farrington submitted claims to Medicaid for services that were never rendered. T.C. also informed NCDOJ-MID that Farrington was married to Haydn Patrick Thomas, and that Farrington was connected to dentist Doctor J.W. and dentist Doctor S.H.

39. In October and November 2015 North Carolina NCDOJ-MID conducted interviews of Medicaid recipients and parents and/or guardians of Medicaid recipients who were identified as allegedly receiving services from DCMBHS. Most of the recipients interviewed had never heard of DCMBHS, Farrington, A.W., or M.T. Many of the recipients interviewed by NCDOJ-MID had received dental services or surgeries from Doctor J.W. or Doctor S.H.

40. DCMBHS submitted claims for OBHS to Medicaid allegedly rendered by A.W. and M.T. DCMBHS was paid by Medicaid for claims submitted for services that were allegedly provided by A.W. or M.T.

41. Medicaid reimbursed DCMBHS for the following services purportedly rendered by A.W. between January 3, 2011 through February 27, 2015:

| Total Reimbursed | CPT Code | CPT Code Description | First Initial | Last Initial |
|---|---|---|---|---|
| $ 1,244,627.99 | 96101 | PSYCHOLOGICAL TESTING | A | W |
| $ 742,623.83 | 90834 | PSYCHOTHERAPY, 45 MINUTES WITH PATIENT | A | W |
| $ 449,921.77 | H0004 | BEHAVIORAL HEALTH COUNSELING AND THERAPY | A | W |
| $ 202,933.16 | 90791 | PSYCHIATRIC DIAGNOSTIC EVALUATION | A | W |
| $ 121,716.80 | 90847 | FAMILY PSYCHOTHERAPY | A | W |
| $ 121,713.94 | 90806 | INDIVIDUAL PSYCHOTHERAPY | A | W |
| $ 55,490.64 | H0031 | MENTAL HEALTH ASSESSMENT | A | W |
| $ 32,999.56 | 90801 | PSYCHIATRIC DIAGNOSTIC INTERVIEW | A | W |
| $ 10,888.17 | 90846 | FAMILY PSYCHOTHERAPY (WITHOUT THE PATIENT) | A | W |

42. Medicaid reimbursed DCMBHS for the following services rendered by M.T. between January 3, 2011 through February 27, 2015:

Affidavit of SA Cheek – Page 7

| Total Reimbursed | CPT Code | CPT Code Description | First Initial | Last Initial |
|---|---|---|---|---|
| $ 369,090.88 | H0004 | BEHAVIORAL HEALTH COUNSELING AND THERAPY | M | T |
| $ 316,480.56 | 96101 | PSYCHOLOGICAL TESTING | M | T |
| $ 121,835.10 | 90806 | INDIVIDUAL PSYCHOTHERAPY | M | T |
| $ 70,214.28 | H0031 | MENTAL HEALTH ASSESSMENT | M | T |
| $ 39,172.34 | 90847 | FAMILY PSYCHOTHERAPY | M | T |
| $ 29,626.26 | 90801 | PSYCHIATRIC DIAGNOSTIC INTERVIEW | M | T |
| $ 16,041.80 | 90834 | PSYCHOTHERAPY, 45 MINUTES WITH PATIENT | M | T |
| $ 5,585.36 | 90791 | PSYCHIATRIC DIAGNOSTIC EVALUATION | M | T |
| $ 5,525.34 | 90846 | FAMILY PSYCHOTHERAPY (WITHOUT THE PATIENT) | M | T |

43. On August 18, 2011, Articles of Incorporation were filed with the North Carolina Secretary of State establishing Carolina Billing Company, Inc. (CBC). The principal office of CBC was listed as 4018 Trotter Ridge Road in Durham, North Carolina. The registered agent of CBC was Patrick Thomas.

44. On October 11, 2011, Thomas opened up account numbers ****2183 and ****2191 at BB&T in the name of Carolina Billing Company. Approximately $761,070.68 was wired from the DCMBHS account ****7128 into these CBC accounts between October 13, 2011 through October 9, 2013.

45. Various witnesses provided information that Thomas provided billing services for Doctor S.H. According to witnesses, Thomas is related to Doctor S.H. Doctor S.H. is known to practice with Doctor J.W. Doctors S.H. and J.W. provide oral care services.

## RELEVENT INTERVIEWS

### Medicaid Recipients and/or Recipient Caretakers
46. Numerous Medicaid recipients and/or recipient caretakers that purportedly received services at DCMBHS were interviewed. The recipients and/or recipient caretakers had never heard of DCMBHS or the service providers at DCMBHS. Many of the recipients interviewed knew Doctor S.H. and/or Doctor J.W. because they had received oral care services from them.

### Biller J.W.
47. On October 13, 2015, former DCMBHS employee "J.W." was interviewed by NCDOJ-MID investigators. J.W. related the following information:

    a. The owners of DCMBHS were Farrington and Thomas. J.W. was hired by Thomas. J.W. worked at DCMBHS in late 2012 and a few months in 2013. Thomas instructed J.W. to copy and paste client information from one computer screen to another computer screen for billing purposes. Thomas told J.W. the client information came from clients that were seen by Farrington in the DCMBHS office. Thomas told J.W. the dates of service and codes to use for billing. Thomas told J.W. how many times each code could be entered per client.

Affidavit of SA Cheek – Page 8

J.W. did not see any supporting documentation, such as medical records, for the information entered for billing. J.W. only used the electronic information given by Thomas.

**Service Provider A.W.**
48. On October 2, 2015, former DCMBHS employee "A.W." was interviewed by investigators. Your affiant also interviewed A.W. with investigators on April 7, 2016. A.W. related the following information:

   a. A.W. worked at DCMBHS from October 2012 through April 2013. A.W. was contracted with the NCDHHS to conduct learning ability evaluations on clients who received disability benefits. A.W. agreed with Farrington for A.W.'s payments from the NCDHHS for A.W.'s evaluations to be paid to DCMBHS, and Farrington would in turn pay A.W. The clients A.W. evaluated via the contract with NCDHHS should not have been billed to Medicaid, because NCDHHS reimbursed A.W. directly through DCMBHS per each client evaluated.

   b. A.W. conducted the learning ability evaluations for NCDHHS at the DCMBHS office, which was located at 311 East Main Street in Durham, North Carolina. A.W. agreed to provide her testing services to DCMBHS. A.W. did not test many clients at all for DCMBHS.

   c. A.W. reviewed a list of over 2,000 recipient names that were billed by DCMBHS as allegedly receiving services from A.W. A.W. did not recognize any of the names on the list as clients she saw for DCMBHS. At most, A.W. saw 20 clients for DCMBHS while she was employed at DCMBHS. Most of A.W.'s work was for NCDHHS. The recipients on the list reviewed by A.W. were billed by DCMBHS using A.W.'s unique Medicaid Provider Number and/or A.W.'s unique NPI Number. The claims submitted to Medicaid also contained MID #'s that uniquely identified the Medicaid recipients who purportedly received services from A.W. Medicaid paid DCMBHS $2,982,915.86 for services purportedly rendered by A.W. between January 3, 2011 through February 27, 2015.

   d. April 30, 2013, was A.W.'s last day working at DCMBHS. A.W. was asked to review a summary of the claims submitted to Medicaid for services allegedly rendered by A.W. at DCMBHS on April 30, 2013. Upon reviewing the summary of claims data, A.W. explained it was not physically possible to render the amount of services billed under her number for April 30, 2013.

   e. A.W. provided emails pertaining to DCMBHS. During the normal course of business at DCMBHS, information was communicated via email. A.W. received emails relating to the schedule, policies, and general information about DCMBHS from **catiniafarrignton@yahoo.com.** A.W. also used this email address to transmit invoices identifying the services provided on behalf of DCMBHS.

f. A.W. provided an email to investigators from DCMBHS that includes Thomas. Thomas is included on an email dated December 12, 2012, that was sent from **catiniafarrington@yahoo.com**. A.W. identified Thomas' email as **patrickthomas2000@yahoo.com**.

**Service Provider M.T.**
49. On October 5, 2015, former DCMBHS employee "M.T." was interviewed by investigators. Your affiant interviewed M.T. with investigators on April 29, 2016, and August 18, 2016. M.T. related the following information:

   a. M.T. worked at DCMBHS from late 2010 until sometime in 2012.

   b. M.T. did minimal work at DCMBHS. While M.T. was employed at DCMBHS, M.T. was enrolled and attending classes in a full-time graduate program out of state.

   c. M.T. provided clinical therapy services to one client while she was employed at DCMBHS. The one client M.T. provided therapy services to was "L.R."

   d. M.T. reviewed a list of over 800 recipient names that were billed by DCMBHS as allegedly receiving services from M.T. Other than L.R., M.T. did not provide services to the recipients on the list she reviewed. The recipients on the list reviewed by M.T. were billed by DCMBHS using M.T.'s unique Medicaid Provider Number and/or M.T.'s unique NPI Number. The claims submitted to Medicaid also contained MID #'s that uniquely identified the Medicaid recipients who purportedly received services from M.T. Medicaid paid DCMBHS $973,571.92 for services purportedly rendered by M.T. between January 3, 2011 through February 27, 2015.

   e. M.T. provided emails that were created and or received during employment with DCMBHS. M.T. received emails from Farrington who utilized the email address: **catiniafarrington@yahoo.com**.

   f. During the normal course of business at DCMBHS, information was communicated via email. M.T. received emails relating to the schedule, policies, and general information about DCMBHS from **catiniafarrington@yahoo.com**. M.T. also used this email address to transmit invoices identifying the work provided on behalf of DCMBHS.

**Former DCMBHS Employee D.P.**
50. On October 19, 2015, former DCMBHS employee D.P. was interviewed by investigators and provided the following information:

   a. D.P. worked at DCMBHS beginning in March 2012. D.P. graded tests as a DCMBHS employee and was trained by Farrington.

Affidavit of SA Cheek – Page 10

b. D.P. also worked for Doctor S.H. while he worked at DCMBHS. D.P. sterilized equipment for Doctor S.H. Thomas, who is Doctor S.H.'s cousin, did S.H's insurance billing.

c. Farrington emailed D.P. names of patients for DCMBHS. D.P. and another employee, N.C., created files and labels from the lists that Farrington gave them.

**Former DCMBHS Employee N.C.**

51. On October 14, 2016, investigators interviewed former DCMBHS employee N.C. Your affiant also interviewed N.C. on June 29, 2016, with investigators. N.C. provided the following information:

    a. N.C. began working at DCMBHS in June 2012 as the practice administrator. N.C. answered phones, scheduled appointments, made copies, filed paperwork, made labels, and completed intake paperwork. N.C. worked at DCMBHS until November 2014.

    b. Thomas was responsible for the payroll at DCMBHS. Thomas worked for Doctor S.H., and N.C. assisted Thomas in calculating charges for S.H's insurance billing. Thomas had a billing company called Carolina Billing. Thomas submitted the insurance billing from his residence.

    c. Farrington's name was on the DCMBHS business, but Thomas seemed to run the business.

    d. N.C. received emails from Farrington while he was employed at DCMHBS that related to his work at DCMBHS. Farrington sent N.C. emails from: **catiniafarrington@yahoo.com.**

## ADDITIONAL FINANCIAL ANALYSIS AND CLAIMS DATA ANALYSIS

52. On April 15, 2016, investigators reviewed DCMBHS bank records. This review concluded that from June 24, 2011 through April 8, 2015, Medicaid electronically deposited a total of $4,079,923.07 into DCMBHS's bank account ****7128 at BB&T.

53. After the Medicaid funds were deposited into DCMBHS bank account ****7128, Farrington and Thomas spent approximately $3,499,991.00 on expenditures that appear to be mostly personal in nature.

54. In August 2016, your affiant reviewed an analysis of Medicaid claims data submitted by DCMBHS, Doctor J.W., and Doctor S.H. The analysis reviewed by your affiant is referred to as a "cross-over" claims analysis. The purpose of this cross-over claims analysis was to determine whether recipients were in fact billed by Dr. J.W. and/or Doctor S.H. prior to being billed by DCMBHS. Over 1,800 recipients were submitted on claims by Doctor S.H. and subsequently billed by DCMBHS. Over 230 recipients were submitted on claims by Doctor J.W. and subsequently billed by DCMBHS.

## STATEMENT OF PROBABLE CAUSE TO BELIEVE EMAIL ACCOUNTS CONTAIN EVIDENCE OF THE TARGET OFFENSES

55. Based on the information set forth in this affidavit, your affiant believes there is probable cause that DCMBHS committed violations of federal law and utilized email accounts described in Attachment A to commit these crimes.

56. DCMBHS had access to unique MID #s billed by Doctor J.W. and Doctor S.H. through Thomas who submitted the billing for Doctor J.W. and Doctor S.H. A review of the claims submitted by DCMBHS revealed that a large number of MID #s billed by Doctors J.W. and S.H. were subsequently billed by DCMBHS.

57. A review of the Medicaid claims data show that DCMBHS billed Medicaid for services allegedly provided by M.T. and A.W. After reviewing a list of recipients billed to Medicaid by DCMBHS using their unique Medicaid Provider Numbers and/or their unique NPI Numbers, both M.T. and A.W. stated they did not render services to the recipients.

58. Former DCMBHS employees received emails from Farrington and Thomas that included lists of patients for billing and creating files. Invoices identifying the services rendered by the service providers were emailed to Farrington.

59. From a review of the documents referenced in this affidavit, and statements from witnesses, your affiant believes that the Yahoo! email accounts identified as:
    a. **catiniafarrington@yahoo.com,** and
    b. **patrickthomas2000@yahoo.com**

    were utilized regularly as part of DCMBHS's business from the inception of the company on February 23, 20009 through the final Medicaid claims submission on May 14, 2015. The email accounts were utilized for scheduling, employee invoicing, and billing operations. Electronically stored communications which purport to explain DCMBH's scheduling, employee invoicing, and general communications in the manner it did, or which otherwise demonstrate knowledge by DCMBHS of the amount and nature of its services billed to the Medicaid program, all constitute direct evidence of the target offenses. There is probably cause to believe there is evidence contained within these email accounts from February 23, 2009 through May 14, 2015.

## CONCLUSION

60. Based upon the information above, I believe that the computer system owned, maintained, controlled and/or operated by Yahoo, there exists evidence, fruits and instrumentalities of violations of 18 U.S.C. § 1028A (aggravated identity theft), 18 U.S.C. § 1035 (false entry) and 18 U.S.C. §§ 1347 and 1349 (health care fraud and conspiracy to commit health care fraud). The facts described above provide probable cause to believe that the evidence, fruits and instrumentalities are located in the email addresses provided in Paragraph 1 above. Therefore, I respectfully request that the Court issue a search warrant directed to Yahoo allowing agents to seize the email account contents and other information stored on the Yahoo servers for the computer accounts and files described in Attachment A, attached hereto and incorporated herein by reference.

_____
Stephanie Cheek, Special Agent
United States Department of Health and Human Services
Office of Inspector General, Office of Investigations


SUBSCRIBED and SWORN before me,

this the 24th day of February, 2017.

_____
THE HONORABLE L. PATRICK AULD
United States Magistrate Judge

Affidavit of SA Cheek – Page 13